# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

_____

OFFICIAL COMMITTEE OF UNSECURED CREDITORS,

        Appellant,

v.                                                  Case No. 11-CV-219

INTERFORUM HOLDING LLC, et al.,

        Appellees.

_____

## ORDER

On March 1, 2011, appellant Official Committee of Unsecured Creditors (the "Committee") appealed from an order of the United States Bankruptcy Court for the Eastern District of Wisconsin ("bankruptcy court") approving the sale of substantially all of debtor's assets free and clear of liens, claims, encumbrances, and interests to Amalgamated Bank, as Trustee of Longview Ultra Construction Loan Investment Fund f/k/a Longview Ultra 1 Construction Loan Investment Fund ("Amalgamated Bank" or the "Bank") and authorizing the debtor to assume and assign executory contracts and unexpired leases to Amalgamated Bank. In response to the appeal, Amalgamated Bank has filed a motion to dismiss the appeal as moot. In support of its motion, Amalgamated Bank argues that the sale has already been consummated, that it qualifies as a good-faith purchaser pursuant to 11 U.S.C. § 363(m), and, therefore, the Committee's failure to obtain a stay pending appeal renders its current appeal moot. For the reasons set forth below, the court affirms the bankruptcy court's finding of good faith, and holds that this appeal is moot under § 363(m) of the

Bankruptcy Code because no effective relief can be granted. The Court will, therefore, dismiss this appeal.

## BACKGROUND

On December 23, 2009, the debtor filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Bankruptcy Code. (Voluntary Pet.) (Docket #1-6). The debtor's primary asset was real estate located in Milwaukee, Wisconsin. (*Id.*). Amalgamated Bank is a secured creditor of the debtor with a properly perfected pre-petition lien on substantially all of the debtor's assets, including the property and debtor's cash. (Appellee's Br. in Supp. at 2). On October 22, 2010, the debtor filed an Amended Sale Procedures Motion, seeking the entry of an order establishing certain procedures to be followed in connection with the auction and sale of debtor's assets pursuant to 11 U.S.C. §§ 105(A) and 363. (Sale Procedure Mot.) (Docket #1-20). As described in the motion, Amalgamated Bank agreed to act as a stalking horse bidder[1] in an auction of the debtor's assets with a credit bid of $55,000,000 pursuant to an Asset Purchase Agreement. (*Id.*). Several parties filed various objections to the Amended Sales Procedure Motion.

---

[1] The goal of an asset sale in the bankruptcy context is to maximize the recovery of value for the bankruptcy estate. To that end, the purpose of a "stalking horse" bid or offer is to establish a framework for competitive bidding and to facilitate a realization of that value. 2 L. Distressed Real Est. § 28B:9. For example, a stalking horse bidder will reach an agreement with the debtor to purchase assets prior to a court-supervised auction of those assets. *Id.* Because typically the bid will be exposed to higher and better bids at auction, the agreement often provides for a "break-up fee" to compensate the stalking horse bidder for "setting the floor at auction, exposing its bid to competing bidders, and providing other bidders with access to the due diligence necessary to enter into an asset purchase agreement." *Id.*

Following hearings on October 27, 2010, and November 8, 2010, to resolve these objections, the bankruptcy court entered an order establishing sale procedures and approving the Asset Purchase Agreement, among other things. (Sale Procedures Order) (Docket #1-58). No party appealed the Sale Procedures Order.

The Sale Procedures Order established extensive procedures governing the sale of the debtor's assets, including requirements for Qualified Bidders and Qualified Bids. (*Id.*). Qualified Bids were required to propose a purchase price for the debtor's assets consisting of cash or non-cash consideration with a value determined by Houlihan Lokey ("Houlihan"), a consultant hired to assist with the marketing of the debtor's assets, to be equal to $55,000,000 plus additional cash at closing in an amount not less than $1,000,000. (*Id.* at 5-6).

Subsequent to the entry of the Sale Procedures Order, the debtor's assets were marketed by Houlihan in accordance with the procedures set forth in the Order. (*See generally* Dec. 23, 2010 Hearing Tr.) (Docket #1-78). Houlihan ultimately received bids from five bidders other than Amalgamated Bank, but none of the bids constituted a Qualified Bid pursuant to the Sale Procedures Order – none of the bids met the $55,000,000 plus $1,000,000 minimum threshold. (*Id.* at 106-07). The highest bid submitted by a bidder other than Amalgamated Bank was $48,000,000. (*Id.*). Because no Qualified Bids were received, no auction of the debtor's assets was held, and the debtor then sought court approval for the sale to Amalgamated Bank as the stalking horse bidder, all in accordance with the Sale Procedures Order.

On December 23, 2010, the bankruptcy court held a hearing on approval of the sale of debtor's assets to the Bank per the Bank's bid of $55,000,000. At the hearing, the bankruptcy court determined that the sale of the debtor's assets was conducted in good faith and that the debtor had exercised good business judgment in connection with the sale. (*Id.* at 122). On December 27, 2010, Amalgamated Bank submitted a proposed order approving the sale. (Proposed Order) (Docket #1-68). On January 2, 2011, the Committee filed its objections to the proposed Sale Order, challenging many aspects of the Sale Order. (Docket #1-73). On January 5, 2011, the bankruptcy court held a hearing on the objections, reaffirmed its finding of good faith, overruled a majority of the Committee's objections, and approved the proposed form of the Sale Order with only a few minor revisions not relevant to this appeal. (Jan. 5. Hearing Tr.) (Docket #1-83). On January 7, 2011, the bankruptcy court entered the Sale Order approving the sale of substantially all of the assets of the debtor to Amalgamated Bank and certifying that Amalgamated Bank was a good faith purchaser. (Sale Order) (Docket #1-75). As part of the sale, Amalgamated Bank agreed to provide a carve-out from its collateral of up to $600,000, including an estimated payment of approximately 10% for the holders of unsecured claims. (*Id.* at 14).

On January 17, 2011, the Committee filed this appeal of the Sale Order but did not seek a stay pending appeal pursuant to Fed. R. Bankr. P. 8005. (Docket #1). Because the Sale Order was not stayed, Amalgamated Bank's assignee, Park

Lafayette Property Holdings, LLC, closed the sale transaction on January 27, 2011. (Appellee's Br. in Supp. at 8).

**DISCUSSION**

In support of its motion to dismiss, Amalgamated Bank argues that the Committee's appeal of the bankruptcy court's sale order is moot because the Committee failed to obtain a stay pending appeal and the sale to the Bank as a good faith purchaser already occurred. On the other hand, the Committee argues that its appeal is not moot for failure to obtain a stay because the Committee is challenging the good faith of the purchaser on appeal. In this case, there is no dispute that the bankruptcy court's order approving sale was not stayed pending appeal to this court.

> According to 11 U.S.C. § 363(m):
>
> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

*Id.* Pursuant to § 363(m), the Seventh Circuit has consistently held that where an appellant fails to obtain a stay pending appeal of an order authorizing the sale of estate property to a good faith purchaser, the appeal is rendered moot by the occurrence of the sale. *In re Vetter Corp.*, 724 F.2d 52, 55 (7th Cir. 1983) ("In the case of a bankruptcy sale, the failure to obtain a stay of the sale, pending appeal, allows the sale to be completed, thus preventing an appellate court from granting relief and thereby rendering the appeal moot."); *In re Sax*, 96 F.2d 994, 997-98 (7th

Cir. 1986) (finding that "§ 363(m) and the cases interpreting it have clearly held that a stay is necessary to challenge" a court-approved sale of property of a debtor to a good faith purchaser); *In re CGI Industries, Inc.*, 27 F.3d 296, 299 (7th Cir. 1994) ("[W]e have repeatedly held that when a party challenges the bankruptcy court's order approving the sale of estate property to a good faith purchaser, it must obtain a stay of that order pending appeal, lest the sale proceed and the appeal become moot.").

However, it is also true that a stay is not necessary when an appeal challenges whether the purchaser is a good faith purchaser pursuant to § 363(m). *See In re Sax*, 796 F.2d at 997 n.4 ("a stay is not required to challenge a sale on the grounds that an entity did not purchase in good faith."); *In re Andy Frain Servs., Inc.*, 798 F.2d 1113 (7th Cir. 1986) (considering the issue of good faith on appeal instead of summarily dismissing the appeal for mootness even though no stay had been obtained by the appellant because appellant had challenged the good faith of the purchaser on appeal); *Petroleum & Franchise Funding, LLC v. Bulk Petroleum Corp.*, 435 B.R. 589 (E.D. Wis. 2010) (finding that failure to obtain stay pending appeal did not render appeal from the sale order moot where appellant challenged bankruptcy court's certification as to purchaser's good faith). Accordingly, the fact that the Committee is challenging the good faith of Amalgamated Bank in purchasing the debtor's property means the Committee's failure to obtain a stay is not automatically grounds for dismissal.

The Committee argues that the simple fact that it challenges the good faith of the purchaser on appeal allows it to survive Amalgamated Bank's motion to dismiss. The Committee cites to this court's decision in *Bulk Petroleum,* 435 B.R. 589, as support for this proposition. In *Bulk Petroleum,* the court considered only the question of whether a challenge to the good faith of a purchaser pursuant to § 363(m) obviates the necessity that the appellant obtain a stay pending appeal. *Id.* at 591-93. However, in its ruling, the court also noted that, at the motion to dismiss stage, it was not necessary to evaluate the merits of whether the purchaser acted in good faith. *Id.* at 591. Instead, the court found it sufficient that the appeal challenged the good faith purchaser status of the appellee and that the appellant had proffered evidence in support of its contention. *Id.* While the court's delay of consideration of the issue of good faith may have been warranted in the context of that case, *Bulk Petroleum* does not stand for the proposition that the issue of good faith can never be considered at the motion to dismiss stage. Indeed, courts routinely consider the issue of good faith in the context of a motion to dismiss. *See e.g., In re Tempo Tech. Corp.*, 202 B.R. 363, 367 (D.Del. 1996) ("Thus, where the good faith of the purchaser is at issue, the district court is required to review the bankruptcy court's finding of good faith before dismissing any subsequent appeal as moot under section 363(m)."); *Raskin v. Malloy*, 231 B.R. 809 (N.D.Okla. 1997) (considering a motion to dismiss pursuant to § 363(m) and concluding that additional briefing was required on the issue of good faith *only* because the court did not have

the complete record from the bankruptcy court); *In re Second Grand Traverse School*, 100 Fed.Appx. 430, 433 (6th Cir. 2004) (finding "[i]t was not error for the district court to consider the issue of good faith in the context of a motion to dismiss under § 363(m)"); *In re HNRC Dissolution Co.*, 2005 WL 1972592, at *5 (E.D.Ky. Aug. 16, 2005) (determining the issue of good faith at the motion to dismiss stage). While the Seventh Circuit has not squarely addressed this issue, the court finds that consideration of whether Amalgamated Bank was a good faith purchaser pursuant to § 363(m) is proper at this stage of the proceedings because a determination can be made on the record of the bankruptcy court, and the appellant had an opportunity to contest the bad faith of Amalgamated Bank in response to the Bank's motion to dismiss. Accordingly, the court turns to the question of whether the bankruptcy court's determination of good faith was in error.

Good faith is a factual finding reviewed for clear error. *Hower v. Molding Systems Engineering Corp.*, 445 F.3d 935, 938 (7th Cir. 2006) (citing *In re Smith*, 286 F.3d 461, 464 (7th Cir. 2002)). The burden of proof is placed on the party alleging bad faith or seeking reconsideration of a good faith finding. *Id*. While the Bankruptcy Code does not define good faith nor state how it is to be established, the Seventh Circuit has said that "'the requirement that a purchaser act in good faith . . . speaks to the integrity of his conduct in the course of the sale proceedings.'" *In re Andy Frain Servs., Inc.*, 798 F.2d at 1125 (quoting *In re Rock Industries Machinery Corp.*, 572 F.2d 1195, 1198 (7th Cir. 1978)). Typically, "fraud, collusion

between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders" will destroy a purchaser's good faith status. *Id.*

Appellant contends that the bankruptcy court's finding of good faith is erroneous. The Committee's argument that Amalgamated was not a good faith purchaser is predicated on the Committee's view that "the sale constituted an improper sub rosa plan of reorganization which short-circuited the purpose and protections afforded to all interested parties under the Bankruptcy Code." (Appellant's Resp. Mot. Dismiss at 6). The Committee asserts that the Bank's lack of good faith is evidenced by the following: the debtor failed to show that the assets will substantially diminish in value; the debtor and the Bank received significant benefits throughout the bankruptcy without filing a plan of reorganization and a disclosure statement; the failure to file a plan and disclosure statement prevented sufficient notice, opportunity to object, and opportunity to vote on the Plan; the property was sold to the Bank after approximately one year, which was sufficient time to file a plan and disclosure statement; the sale was predicated upon multiple compromises of potential claims by the estate which were not supported by sufficient justification; the sale and carve-out benefitted one set of creditors over another set of similarly situated creditors without evidencing a distinction between them; the sale resulted in payments to management which, under a plan, would violate the absolute priority rule; details of the settlement reached with certain creditors were not

disclosed; neither the debtor nor the Bank made any showing as to why the sale, absent a plan, is necessary or in the best interests of the estate; the sale dictates the entire outcome of the Chapter 11 case; neither the debtor nor the bank had a basis for an expedited sale as the property was sold back to the bank similar to a foreclosure sale; the bank refused to hold the auction when the auction could have increased bids as was testified to at the hearing by Patrick Gillan; and the carve-out for unsecured creditors is not reasonable considering the costs and expenses. (Appellant's Resp. Mot. Dismiss at 6-7).

However, the majority of these contentions do not actually speak to Amalgamated Bank's alleged bad faith within the meaning of § 363. As the Seventh Circuit has made clear, bad faith in the § 363 context refers to bad faith in the conduct of negotiations, something that the Committee has not demonstrated. *In re Rock Industries Machinery Corp.*, 572 F.2d at 1198. To the contrary, the record is rife with evidence of the Bank's good faith effort to find bidders for the debtor's property. For instance, the record reflects that Amalgamated Bank made substantial efforts to find bids for the highest reasonable value. Most notably, the Bank hired Houlihan as a consultant to assist with the marketing of the debtor's assets. The testimony of Patrick Gillan ("Mr. Gillan"), Senior Vice President of Houlihan, reflects that Houlihan, at the direction of Amalgamated Bank, worked diligently to find Qualified Bids. For example, Mr. Gillan testified that the agreement between Amalgamated Bank and Houlihan was typical of other engagements in that the Bank

wanted to get the highest and best price for the property. (Dec. 23, 2010 Hearing Tr. at 102) (Docket #1-78). Mr. Gillan also testified that it was his impression that Amalgamated Bank wanted Houlihan to find a bidder for the property that would ultimately buy it. (*Id.* at 106). Mr. Gillan testified that the terms of the agreement between the Bank and Houlihan provided Houlihan with an incentive to pursue the highest and best price for the property. *(Id.* at 103). Mr. Gillan testified that to market the property, Houlihan did the following: (1) prepared a 60-100 page package describing the investment; (2) prepared an extensive investor list, including 50-100 targets to actively call and e-mail; (3) broadly marketed the property by e-mail through a real estate distribution system; (4) contacted over 2,600 investors by e-mail and 185 investors by telephone and follow up e-mail; (5) obtained 38 signed confidentiality agreements from individuals interested in accessing the online data room for the property; and (6) conducted site visits for potential investors to visit the property. (*Id.* at 103-05). Despite these efforts, no party other than Amalgamated Bank submitted a qualified bid by the bid deadline. (*Id.* at 106-07).

Furthermore, the bankruptcy court heard testimony from James Freel ("Mr. Freel"), Senior Vice President and Chief Real Estate Officer of the Asset Management and Trust Division of Amalgamated Bank. Mr. Freel testified that the Bank offered $55,000,000 as its stalking horse credit bid because it felt that amount represented a fair value for the property. (*Id.* at 81). Mr. Freel also testified that if a party had submitted a Qualified Bid in an amount acceptable to Amalgamated Bank,

the Bank would have consented to the sale to that party. (*Id.* at 82-83). Indeed, Mr. Freel averred that a sale to a party other than the Bank was Amalgamated Bank's objective when it engaged Houlihan to market the property. (*Id.*) Mr. Freel testified that the Bank acted in good faith, did not act in contravention of law, did not collude with any party, did not discourage any party from bidding on the property, did not instruct Houlihan to refrain from speaking to bidders, and had not entered into any agreements with third parties to sell the property after the transfer of title to the Bank. (*Id.* at 83-84).

Moreover, there is no evidence indicating that the debtor and Amalgamated Bank failed to comply with the bidding and auction procedures as set forth in the Sale Procedures Order. Indeed, no party, not least of all the Committee, filed an appeal of that Order. Thus, the Committee's contention that the Bank's failure to conduct an auction evidences the Bank's bad faith is without merit. Pursuant to the Sale Procedures Order, an auction of the debtor's assets was only to occur if the debtor received one or more Qualified Bids in addition to Amalgamated Bank's Qualified Bid. (Sale Procedures Order at 9) (Docket #1-58). No Qualified Bids other than Amalgamated Bank's bid were received and, thus, no auction was required.

On the other hand, at the hearing before the bankruptcy court, though the Committee cross-examined both Mr. Gillan and Mr. Freel, it did not elicit any testimony indicating that the Bank purchased the property in bad faith, nor did it offer any other evidence demonstrating that Amalgamated was not a good faith

purchaser. The only evidence the Committee points to as support for its challenge to the Bank's good faith status is the testimony of Mr. Gillan in which he states that after the formal submission of all bids, some bidders informed Houlihan that they may have been able to submit a higher bid. (Dec. 23, 2010 Hearing Tr. at 109). However, Mr. Gillan categorized these statements as "soft comments" and further noted that no bidder actually submitted a higher bid and no bidder ever indicated that they could reach or even come close to bidding at the Qualified Bid level. (*Id.*).

Based on this evidence, the bankruptcy court determined that the sale was conducted in good faith and that the debtor had exercised good business judgment in connection with the sale. (*Id.* at 122). The bankruptcy court explicitly found that there was no evidence of collusion or of any attempt to discourage bidders from participating in the auction. (*Id.* at 126). Specifically, the bankruptcy court stated: "I think looking at the sale as a whole, there is simply not any evidence that there has been anything other than a good faith effort to conduct the sale in a way that would maximize the benefit for all creditors, not the least of whom of course is Amalgamated." (*Id.* at 128).[2] The court also noted that simply because the bidding process did not "pan out" in the way the Committee wanted, this was not "an after the fact demonstrator of bad faith." (*Id.* at 127).

---

[2] The Committee objected to many aspects of the Sale Order and, in light of these objections, another hearing was held on January 5, 2011. At this hearing, the bankruptcy court reaffirmed its finding of good faith and stated yet again that it did "not hear one iota of evidence that the bank did not comply with the procedures that were outlined in the Sale Order." (Jan. 5, 2011 Hearing Tr. at 15) (Docket #1-83).

-13-

Furthermore, the court found that the sale was not an attempt to subvert the plan process. (*Id.* at 124). Significantly, it addressed the Committee's concerns over a confidential settlement agreement that occurred between Amalgamated Bank and another creditor, Hunzinger Construction Company ("Hunzinger"). At the bankruptcy court hearing and now on appeal, the Committee argues that the terms of that settlement agreement should have been disclosed and also that the carve-out given to the unsecured creditors as a part of the asset sale did not benefit the unsecured creditors to the same degree as Hunzinger benefitted from the settlement with Amalgamated Bank. Accordingly, the Committee argues that the carve-out and the sale are not fair and that the sale was not conducted in good faith. The bankruptcy court responded to this argument by noting that Hunzinger decided to file an adversary proceeding, not against the debtor, but against Amalgamated Bank, another creditor. (*Id.* at 124-25). These two parties resolved their dispute and the debtor was not a party to the settlement. (*Id.*) Therefore, there was no requirement that the terms of that settlement be disclosed. (*Id.*). Moreover, the bankruptcy court found that Amalgamated Bank's settlement with Hunzinger, even if it resulted in disparate treatment among creditors, was not evidence that the sale of assets was conducted in bad faith. Specifically, the bankruptcy court found that the other creditors had the same opportunity as Hunzinger to file an adversary proceeding against Amalgamated Bank, but chose, for whatever reason, not to do so. (*Id.*). In

light of this fact, the bankruptcy court noted it was unreasonable for the Committee to now argue that the sale of assets was unfair and conducted in bad faith. (*Id.*)

The bankruptcy court's findings are not clearly erroneous. They are well supported by substantial evidence in the record. There was no evidence on the record of collusion, fraud, or an attempt to take grossly unfair advantage of other bidders. In fact, there is only evidence to the contrary – that Houlihan made extensive efforts to market the debtor's property. And, while there is evidence of some communication and cooperation between Amalgamated Bank and the debtor, the Committee has not shown that the communication and cooperation amounted to anything other than a good faith attempt to maximize the recovery of value of the property for the benefit of the bankruptcy estate. Furthermore, the fact that Hunzinger may be benefitting differently than other creditors due to its decision to file a lawsuit against Amalgamated Bank, and the fact that the settlement terms have not been disclosed to the Committee, is not evidence of bad faith, especially because the debtor was not a party to this separate proceeding and all the creditors had the same opportunity as Hunzinger did to file an adversary proceeding against Amalgamated Bank. Accordingly, this court is satisfied that the bankruptcy court's conclusion that the sale was made in good faith is correct.

Because the appellant did not obtain a stay of the sale order and because the sale was made in good faith, Amalgamated Bank's motion to dismiss pursuant to 11 U.S.C. § 363(m) will be granted and this appeal will be dismissed.

Accordingly,

**IT IS ORDERED** that the bankruptcy court's finding of good faith be and the same is hereby **AFFIRMED**;

**IT IS FURTHER ORDERED** that appellee Amalgamated Bank's Motion to Dismiss the Appeal as Moot (Docket #3) be and the same is hereby **GRANTED**; and

**IT IS FURTHER ORDERED** that this appeal be and the same is hereby **DISMISSED** as moot pursuant to 11 U.S.C. § 363(m).

The clerk of court is ordered to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 7th day of July, 2011.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge